UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CRAIG THOMAS BATES,

    Plaintiff,

    v.                                                         Case No. 04-C-1160

MATTHEW J. FRANK,
KARL DRESEN,
MARK MANCHESTER,
RONALD MOLNAR,
CAPTAIN LOWMAN,
CAPTAIN DIEBOLD, and
OFFICER WADE,

    Defendants.

O R D E R

On December 3, 2004, the plaintiff, Craig Thomas Bates, who is currently incarcerated at the Stanley Correctional Institution, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, along with a petition to proceed *in forma pauperis*. The amended complaint ("complaint"), which was filed on April 7, 2005, is the operative complaint in this case. By order of July 28, 2005, the court screened the complaint pursuant to 28 U.S.C. § 1915A and granted the plaintiff's motion for leave to proceed *in forma pauperis* with respect to four claims stemming from his detention at the Racine Correctional Institution/Sturtevant Transitional Facility (RCI/STF): (1) a Fourteenth Amendment due process claim against defendants Frank, Dresen and Manchester; (2) an Eighth Amendment claim against defendants Lowman, Calaway and Kratzer; (3) an equal protection claim against defendant Molnar; and (4) a retaliation claim against defendant Wade.

Presently before the court is the defendants' motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

When ruling on a motion to dismiss under Rule 12(b)(6), the court must focus on the pleadings of the parties. If "matters outside the pleadings are presented to and not excluded by the court" in connection with a motion to dismiss for failure to state a claim, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b).

In their motion to dismiss, the defendants state that they are relying entirely on the plaintiff's verified complaint and the documents attached thereto as a basis for their motion. Consideration of the verified complaint and attached documents alone would not require the court to convert the motion to dismiss to one for summary judgment. *See Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004) ("Attachments to the complaint become part of the complaint and the court may consider those documents in ruling on a motion to dismiss.") However, in responding to the defendants' motion, the plaintiff submitted his personal affidavit. *(See* Plaintiff's Affidavit in Support of Response to Defense' [sic] Motions for Summary Judgment (hereinafter, "Plaintiff's Aff. Support") (Docket #39)). Thereafter, the defendants submitted the affidavit of Jennifer Wrysinski, an Inmate Complaint Examiner (ICE) at the RCI, various documents relating to the plaintiff's use of the Wisconsin Department of Corrections Inmate Complaint Review System (ICRS), along with their reply brief.

Because the parties have submitted affidavits and documents outside of the complaint which are relevant to the motion to dismiss, the court must treat the defendants' motion to dismiss as one for summary judgment. In such circumstances, however, a district court cannot properly rule on a motion for summary judgment without providing the opposing party a "reasonable opportunity" to contradict the material facts asserted by the movant. *Lewis v. Faulkner*, 689 F.2d 100, 101 (7th Cir. 1982). This means that a pro se prisoner who is a plaintiff in a civil action is entitled to receive notice of the consequences of failing to respond to a motion for summary judgment or to a motion to dismiss supported by affidavits. *Id.*

In this case, counsel for the defendants provided the plaintiff with the required notice statement as well as with copies of the text of Rule 56(e) and (f), Federal Rules of Civil Procedure and the text of Civil Local Rules 7.1, and 56.1 (E.D. Wis.). However, the defendants did not provide the plaintiff with a copy of the text of Civil Local Rule 56.2 as required under Civil Local Rule 56.1. Such omission is not fatal to the defendants' motion in this case. Here, the plaintiff was the party who first introduced matters outside the pleadings when he submitted a new affidavit as his response to the defendants' motion. In addition, the fact that he captioned his response as a response to the defendants' "Motions [sic] for Summary Judgment" indicates that he was aware of the consequences of introducing matters outside the pleadings.

The court finds that the plaintiff has been given notice and a fair opportunity to present counter-affidavits or other evidence. Accordingly, the defendants' motion to dismiss will be treated as one for summary judgment.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)*; McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial-(1) the absence of a genuine issue of material fact, and (2) an entitlement to judgment as a matter of law-is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see*

---

[1] In response to the defendants' reply brief and supporting affidavit, the plaintiff filed a "Second Response to Defense Motion for Summary Judgment." (Docket #46.) This submission is not contemplated under the standard motion practice set forth in Civil Local Rule 7.1 or under Civil Local Rule 56.2 which governs summary judgment motion procedures. Nevertheless, the defendants have not objected to the submission and the court finds that the plaintiff's *pro se* status justifies consideration of the submission at the summary judgment stage.

also, Celotex Corp.,* 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleading themselves . . ."); Fed. R. Civ. P. 56(e) ("When a summary judgment motion is made and supported as provided in [Rule 56(c)], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (emphasis added).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). However, the court is not required to draw every conceivable inference from the record – "only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted).

### PLAINTIFF'S DUE PROCESS CLAIM

The plaintiff's first claim is that defendants Frank, Dresen, and Manchester deprived him of liberty without due process of law in violation of his Fourteenth Amendment rights when they transferred him from the Racine County Jail to the RCI/STF "prior to being served a judgment of conviction, court order, or having [his] parole revocated . . . ." (Complaint at 5.) In the July 28, 2005, screening order, the

court read the plaintiff's complaint as alleging that he had been detained at the RCI/STF without a basis for that detention. (*See* July 28, 2005, Order at 4-5.) The defendants contend that there was a basis for the plaintiff's detention at the RCI/STF—he was being held pending his parole revocation proceedings. The following undisputed facts support the defendants' contention.

On August 25, 2004, the plaintiff was transferred from the Racine County Jail to the RCI/STF by Mark Manchester, his parole agent, Karl Dresen, the supervisor of the DOC division of Community Corrections, and Matthew Frank, the secretary of the WDOC. (Complaint at 5.) The documents attached to the plaintiff's complaint reveal that the plaintiff was transferred to the RCI/STF pending resolution of his parole revocation proceedings. The plaintiff states in Offender Complaint "RCI-2004-31881," dated October 6, 2004, that his status while at the RCI/STF was a "'DOC/Temporary Hold'" under "Adm. Code, sec. 328 and 331." (Complaint at Attachment 8.) In addition, later in that offender complaint the plaintiff made the following statement: "Should I get revoked today, this violation by defendant Gegare still exists." (Id.)

In another Offender Complaint dated October 31, 2004, the plaintiff refers to himself as a "P&P prisoner" (Complaint at Attachment 23) which, according to the defendants, refers to a "probation and parole prisoner." (Defendants' Brief in Support of Motion to Dismiss at 3.) The plaintiff does not challenge this representation. Further, in his "Request for Review of Rejected Complaint" dated November 4, 2004, the plaintiff states that he needs access to legal materials in order "to produce and provide copies of my appeal of my revocation hearing . . . ."

(Complaint at Attachment 25.) Other offender complaints (dated November 3, 2004 and November 8, 2004) which show that the plaintiff wished to pursue various challenges to his parole revocation support the conclusion that the defendant was held at the RCI/STF throughout and after his parole revocation proceedings. (Complaint at Attachments 26 and 28.)

Based on these facts, the court concludes that there was a basis for the plaintiff's transfer to and detention at the RCI/STF—his ongoing parole revocation proceedings. The plaintiff, in his response to the instant motion, has further elaborated on his due process claim. He explains that his claim is that he had a "liberty interest created by State Statute . . . and [was] entitled to due process of law before being housed in a "State Prison." (Plaintiff's Aff. in Support at ¶ 6.)

It is important to note that the plaintiff is not claiming that his parole was revoked without due process of law, nor is he challenging his detention at the Racine County Jail during the pendency of his parole revocation proceedings. Rather, he claims that he had a protected liberty interest created by state law in remaining in the county jail rather than being transferred to a state correctional facility pending the outcome of his parole revocation.

Liberty interests can be created by state statute or regulation. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976); *Felce v. Fiedler*, 974 F.2d 1484, 1493 (7th Cir. 1992). Here, the plaintiff does not identify the statute or regulation which grants him the liberty interest he asserts. The defendants, on the other hand, argue that the plaintiff has no liberty interest under the applicable state statutes and administrative regulations because the language of those statutes and regulations

gives the DOC discretionary authority to temporarily keep its detainees in county jails but does not create an absolute obligation on the part of the DOC to use county jails. In other words, the defendants argue that the plaintiff had no justifiable expectation of remaining in the county jail pending his parole revocation proceedings which could be said to give rise to a liberty interest.

In support for their assertion, the defendants point to Wis. Admin. Code § DOC 328.22(5), which provides that the DOC "may detain a client on parole from a state correctional institution or on felony probation in an institution pending revocation proceedings." Under Wisconsin statutes, the DOC "may use any of its facilities for the temporary detention of persons in its custody." Wis. Stat. § 302.19 (2003-04). In addition, the DOC is also permitted to utilize a county jail for the detention of persons in custody under Wis. Stat. § 302.31(6).

The defendants are correct in their assertion that the applicable statutes and administrative regulations give the DOC discretion to detain individuals during the pendency of their parole revocation proceedings in either a county jail or a state correctional facility. However, the United States Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), rejected the methodology of parsing the language of a particular regulation when determining the existence of a state created liberty interest. The Court has recently explained that "the touchstone of the inquiry into the existence of a protected, state-created liberty interest . . . is not the language of the regulations regarding those conditions but the nature of those conditions themselves in 'relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, ___ U.S. ___, 125 S. Ct. 2384, 2394 (2005) (quoting *Sandin*, 515 U.S. at 484). In

making this evaluation, a court must determine whether the conditions of confinement are "an atypical and significant hardship within the correctional context." *Wilkinson*, 125 S. Ct. at 2394-95. Once a liberty interest is established, the court must then address the question of what process is due under the particular circumstances of the case. *Id.* at 2395.

In the instant case, the plaintiff has not provided the court with any evidence from which the court can reasonably conclude that the conditions at RCI/STF were "atypical" or imposed a "significant hardship." Indeed, the fact that the statutory and regulatory scheme contemplate placement of detainees during parole revocation proceedings in state correctional institutions like RCI/STF suggests that his placement there was not "atypical." Moreover, the plaintiff has not shown that the conditions at RCI/STP were so egregious or in any way different from those at the Racine County Jail such that his transfer was not within the norm for detained parole violators.

In the absence of such evidence, the court finds that the plaintiff has failed to show that he had a state created liberty interest in remaining outside the state prison system pending his parole revocation proceedings. As a result, the defendants are entitled to summary judgment on the plaintiff's due process claim.

### PLAINTIFF'S EIGHTH AMENDMENT, EQUAL PROTECTION, AND RETALIATION CLAIMS

The defendants also argue that they are entitled to summary judgment on the plaintiff's Eighth Amendment claim against defendants Lowman, Calaway and Kratzer, his equal protection claim against defendant Molnar, and his retaliation

claim against defendant Wade because the plaintiff failed to exhaust his administrative remedies with respect to those claims as required under 42 U.S.C. § 1997e. The following facts are germane to the defendants' argument.

Undisputed Facts[2]

The plaintiff alleges that on September 7, 2004, he was "forced to sleep overnight with a backed-up sewage system and the awesome smell of stool and no way to allow air into the cell." (Complaint at 5-6, ¶¶ 2-3.) He asserts that on September 9, 2004, defendant Molnar released his cellmate from "TLU status" but did not release the plaintiff. (Complaint at 6, ¶ 4.) Plaintiff also alleges that on or about September 26, 2004, defendant Wade issued a conduct report to him in retaliation for the plaintiff writing a grievance against defendant Wade. (Complaint at 6, ¶ 7.)

In Wisconsin, the Inmate Complaint Review System (ICRS) provides the administrative remedy to inmates who wish to pursue complaints "regarding rules, living conditions, and staff actions" and "civil rights grievances." *See* Wis. Admin. Code § DOC 310.01(2)(a) and (h). All inmates housed in a state adult correctional facility are entitled to utilize the ICRS. *See* Wis. Admin. Code § DOC 310.02.

Prior to filing an inmate complaint, inmates must adhere to Wisconsin Administrative Code § DOC 310.05, which provides:

> **Exhaustion of administrative remedies**. Before an inmate may commence a civil action or special proceedings against any officer, employee or agent of the department in the officer's employee's or

---

[2]The relevant facts are based upon the factual propositions set forth in the affidavit submitted by the defendants', the verified complaint, and the Plaintiff's Affidavit in Support to the extent that such factual propositions are undisputed. *See* Civ. L.R. 56.2 (E.D. Wis.).

agent's official or individual capacity for acts or omissions committed while carrying out that person's duties as an officer, employee or agent or while acting within the scope of the person's office, the inmate shall exhaust all administrative remedies that the department of corrections has promulgated by rule.

An Inmate Complaint Examiner (ICE) is required to return complaints without processing them that contain more than one issue or do not otherwise meet the requirements of Wis. Admin. Code § DOC 310.09(1). *See* Wis. Admin. Code § DOC 310.09(3). Unless good cause is shown, the Administrative Code requires that a complaint be filed within 14 days of the event giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6). Further, an ICE may direct the inmate to attempt to resolve his or her issue, prior to accepting the complaint. Wis. Admin. Code § DOC 310.09(4).

When processing an inmate complaint, an ICE is empowered to investigate the complaint and reject the complaint for certain enumerated reasons including that the issues in the complaint are not within the scope of the ICRS. Wis. Admin. Code § DOC 310.11(5)(a)-(h). If the ICE does not reject a complaint, he or she is required to make a recommendation regarding its disposition to the appropriate reviewing authority. Wis. Admin. Code § DOC 310.11(4). The appropriate reviewing authority can then affirm, dismiss, or return a complaint. Wis. Admin. Code § 310.12(2).

An inmate who is dissatisfied with the decision of the reviewing authority may appeal that decision to the Corrections Complaint Examiner (CCE) who then makes a recommendation to the Secretary of the DOC. Wis. Admin. Code § DOC 310.13. The Secretary can accept, adopt or reject the recommendation or may return the

appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2). If the Secretary does not issue a decision within 45 days of the CCE's acknowledgment of receipt of the appeal, an inmate can consider his or her administrative remedies exhausted. Wis. Admin. Code § DOC 310.14(3).

The plaintiff's Inmate Complaint History Report shows that between September 7, 2004 (the date on which the toilet backed up in the plaintiff's cell), and April 7, 2005 (the date of the filing of the amended complaint), the plaintiff filed 11 inmate complaints and none of them alleged Eighth Amendment violations concerning the sewage issue, an equal protection claim against defendant Molnar or a retaliation claim against defendant Wade. (Wrysinski Aff. ¶ 7, Ex. 1.)

Of these 11 complaints, one – RCI-2004-31881 – was successfully filed during the time in which the plaintiff's inmate status was that of a confined parolee awaiting his final parole revocation proceeding. (Wrysinski Aff., Ex. 1, at 6.) That complaint raised due process challenges to two conduct reports that were given to the plaintiff. (*Id.*, and Bates Aff., Ex. 13.) This complaint was ultimately rejected pursuant to Wis. Admin. Code § DOC 310.08(2)(a), as being outside the scope of the ICRS process because the plaintiff had not appealed the decisions of the adjustment committee to the warden. (Bates Aff., Ex. 17.)

The plaintiff's inmate complaint records also show that the ICE's office received a complaint from him on September 24, 2004, that alleged the following:

> I was demoted from a level (3) prisoner to a level (1) by C/O Horn and Sgt. Niemer as the result of informing other P&P hold prisoners of the legality of our confinement here at STF. I was subsequently moved back to A Pod and into cell 203 with prisoner Steven Groh #446629, who informed me that he'd had problems with the toilet. On the 8th,

> the toilet overflowed as my cellmate was using it causing crap to run over onto the floor. We informed 1st, 2nd and 3rd shift about the problem only to be told that we had to either fix it or deal with it. Second shift in particular was very nasty about it. Sgt. Calaway and that [shift's Captain]. We were forced to stay in that cell all that day and then thru the night. The next morning when my cell mate and I refused to either fix it or return to it, we were escorted to the RCI's segregation unit by Lt. Steinke. My cell mate was released on Thursday, I was released on Friday. My cellmate was not issued a [conduct report;] I was issued a [conduct report] on [Saturday]. I was released back to STF with TLU status. My cell mate did not have TLU status. . . .
>
> The act as described above was a direct violation of the DOC's own rules as stated in [Wis. Stat. § 303.01(1):] "The department may discipline inmates in its legal custody." It goes on to define "legal custody," a prisoner who [has] been committed to the department by virtue of a judgment of conviction or court order. The fact that my cell mate and I are on P.O. holds, to commit us to the DOC denies us Due Process and Equal Protection of the law. 14th Amendment, U.S. Const.
>
> The DOC has arbitrarily subjected us to cruel and unusual punishment whereby causing us to endure the stench over night from the flooded toilet. In violation of the 8th Amend.
>
> The DOC and DCC have continually violated our Due Process right by false imprisonment in a "State Prison" without a judgment of conviction, court order or revocation of probation or parole. Then subjecting us to the RCI's segregation unit.
>
> The DOC and its staff here at RCI and STF have been racially indifferent to me as (despite the legality of it) they have shown favor toward my cellmate who is Caucasian. Something that's prevalent here at this institution even toward staff.

(Wrysinski Aff. ¶ 10, Ex. 2.)

The ICE office returned this complaint to the plaintiff without processing it because it contained more than one issue which was contrary to the filing requirements of Wis. Admin. Code § DOC 310(1)(e). (Wrysinski Aff.¶ 11, Ex. 3.) In addition, the ICE stated that the plaintiff needed to attempt to resolve the issue

by contacting his Agent of Record or Field Supervisor before it would accept the complaint. (*Id.*) The plaintiff did not re-file this inmate complaint, nor did he file individual complaints which separately raised the issues identified in the returned complaint. (*Id.* at ¶¶ 9, 12, and Ex. 1.)

Discussion

The defendants argue that the plaintiff failed to exhaust his Eighth Amendment, equal protection, and retaliation claims. The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999)). Failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

The plaintiff does not challenge the defendants' assertion that he failed to exhaust his administrative remedies with respect to the claims advanced in his complaint. Rather, he maintains that he was prevented from pursuing these administrative remedies. The Court of Appeals for the Seventh Circuit has recognized that administrative remedies may not be "available" to a plaintiff where prison employees prevent an inmate access to an administrative remedy. *See Id.*

at 656 ("If prison officials fail to provide inmates with those forms when requested, it is difficult to understand how the inmate has any available remedies.")

The plaintiff contends that "'DCC Temp Holds' were not given a file number as a method of preventing one's ability to exhaust administrative remedies" (Plaintiff's Aff. in Support ¶ 10). The plaintiff provides no evidence to support his contention that his inmate complaints were returned to him because of his temporary hold status at RCI/STF. "It is well settled that conclusory allegations . . . without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002)(citing *Patterson Chi. Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998)). The undisputed facts show that the one inmate complaint submitted by the plaintiff which raised his Eighth Amendment and equal protection claims was returned to him without being processed (and therefore without a file number) because it contained more than one issue and therefore, did not comply with the filing requirements of Wis. Admin. Code § DOC 310. (Wrysinski Aff. ¶¶ 10-11 and Exs. 2-3.)

Moreover, his contention that his hold status prevented him from pursuing administrative remedies is belied by the fact that he did successfully file inmate complaint RCI-2004-31881while he was being held pending revocation of his parole. Again, his bald assertion that this complaint was dismissed "once it was discovered that [he] was a DCC Temp hold for an unjustified reason" finds no support in the record. The undisputed facts show that complaint RCI-2004-31881 was properly rejected under Wis. Admin. Code § DOC 310.08(2)(a) as being

outside the ICRS process because the plaintiff had not appealed the adjustment committee's decision to the warden.

In view of the above, the court finds that the plaintiff has not satisfied the exhaustion requirement set forth in 42 U.S.C. § 1997e(a), with respect to the claims advanced in his complaint. Therefore, the defendants are entitled to summary judgment with respect to the plaintiff's Eight Amendment, equal protection, and retaliation claims.[3]

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #34), be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** with prejudice.

The clerk of the court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this   27th   day of January, 2006.

BY THE COURT:

  s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge

---

[3] As an additional matter, the defendants request that the claims against defendant Diebold should be dismissed because "[t]he Court's July 28, 2005, Screening Order did not grant plaintiff leave to proceed on any claims against Defendant Diebold." The court's conclusion that the defendants' are entitled to summary judgment as to all of the plaintiff's claims renders this request moot.